**JoAnn McKENNA,**
**Petitioner–Respondent,**

v.

**Michael McKENNA,**
**Respondent–Appellant.**

No. 42197.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 21, 1980.

Cox, Moffitt & Cox, Dallas W. Cox, Jr., St. Louis, for respondent–appellant.

Roderick M. Coday, St. Louis, for petitioner–respondent.

CLEMENS, Senior Judge.

In this dissolution of marriage action husband Michael McKenna appeals from the decree. He challenges neither its dissolution nor child–custody provisions. However, he specifically contends the trial court twice erred in its decree: First, in awarding the wife JoAnn McKenna an undivided half–interest in real estate, which he contends was his separate property, not marital property as treated by the trial court.

Second, he contends the wife had adequate means to pay her own attorney fees and the court erred in ordering him to pay her $950 for that fee.

We consider these two points in inverse order, first, the husband's contention on awarding the wife a $950 attorney fee. He does not challenge the amount but attacks it on the ground her income exceeded his.

The husband's monthly income was $832 and he testified to monthly expenses of $1,100 including $260 per month for child support.[1] This left him a monthly deficit of $268. The wife's monthly wages, and her expenses, were each $1,100.

To support his claim of excessive award the husband relies on *Ortman v. Ortman*, 547 S.W.2d 226 [8–10] (Mo.App.1977). There, the award of counsel's fee against the husband was reversed. The facts are distinguishable. The wife was employed and had funds to pay her own fee; the husband was unemployed and had no funds. *Ortman* does not support the husband's contention.

■■■ By Section 452.355, RSMo.1978, counsel fees may be awarded by the trial court "after considering all relevant factors". The award is discretionary and reviewable only for abuse. *Stegemann v. Fauk*, 571 S.W.2d 697 [6–7] (Mo.App.1978), and cases therein cited. The wife's financial need for counsel's fees is to be considered but that "is only one factor". *Hahn v. Hahn*, 569 S.W.2d 775 [6] (Mo.App.1978). In considering that factor here we consider that the husband lived in and owned his home while she had to rent a residence for herself and the parties' two children.

■■■ Overall, we conclude there is no abuse of discretion in awarding attorney fees against the husband.

We move to the more hotly contested issue—awarding the wife a half interest in the husband's residence.

As to this real estate, at the time of marriage the husband owned a residence at 518 Averill in the City of Ferguson, St. Louis County. The parties lived there for a year, from their marriage until separation. By its decree the trial court decreed: "Petitioner awarded one–half interest in the residence at 518 Averill with respondent to be responsible for the monthly payments thereon."

We note parenthetically that this real estate was worth about $20,000, subject to the husband's $15,000 purchase money mortgage; therefore, his equity was approximately $5,000. By the decree awarding the wife a half interest in gross, she got an equity worth $10,000; the husband, although being awarded one–half the gross value, was obligated to pay his secured $15,000 debt. Thus, the effect of the husband's award was that he had to pay $15,000 in order to get his "half interest" of $10,000.

■■■ Concerning the trial court's treatment of the residence as marital property: By Section 452.330.2, RSMo.1978 "marital property" means property acquired *after* marriage; in contrast, property owned by a spouse before the marriage, as here, is not marital property but is that spouse's separate property. *In re Marriage of Brethauer*, 566 S.W.2d 462 [1] (Mo.banc 1978); *Hulsey v. Hulsey*, 550 S.W.2d 902 [1] (Mo.App.1977). Although by Section 452.330.1, the court in a dissolution case shall divide marital property, "the court shall set apart to each spouse *his* property". (Our emphasis.) We hold the dwelling here was the husband's separate property, not marital property, and prima facie the court erred in divesting the husband of his interest.

The wife contends her husband orally agreed to convey the home to her and she seeks specific performance. In this she must overcome the statute of frauds, Section 432.010, RSMo.1978, barring actions based on an alleged contract to convey realty unless in writing. And as to contracts for marriage, Section 451.220, RSMo.1978, requires that all contracts to convey shall be in writing.

■■■ Under Rule 73.01, Subd. 3, V.A.M.R., we review a court–tried case upon both the

---

1. The two children were born to the parties during their previous marriage to each other.

law and the evidence, giving regard to the trial court's opportunity to judge credibility of witnesses. However, we may reach a contrary conclusion if we conclude either that the decree is against the weight of the evidence or that it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 [1–3] (Mo.banc 1976). In this, a claimed exception to the statute of frauds is viewed with caution. See the oft–cited case of *Selle v. Selle*, 88 S.W.2d 877 [1–5] (Mo.1935).

■ To avoid the cited statutes the wife relies on her own testimony about the husband's oral promise to convey. In this, she bears a heavy burden. As ruled in *Peluse v. Peluse*, 367 S.W.2d 487 [2, 3] (Mo.1963): "This suit is in the nature of specific performance. Among other defenses defendants pleaded the statute of frauds, and certain statutes relating to marriage contracts. Sections 432.010, 451.220, and 451.230, RSMo.1959, V.A.M.S. Plaintiff sought to avoid the force of those statutes by pleading full performance on her part. Plaintiff is required to prove her case by convincing evidence, and, it has been said that (1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; . . ."

We note that the wife did not plead a contract to convey the real estate; instead she pleaded, erroneously, that the real estate was marital property. But, we look to the parties' testimony.

At trial the wife testified: "(Question) What agreement did you have with your husband with respect to the real estate immediately prior to your marriage to him the second time? (Answer) We both agreed that when we got remarried that things would be as one in marriage as it should be and never was in the beginning. He wanted the house in my name. He said it will be taken care of. I will arrange for everything to be put back in your name so you will be secure for the future and my sons. That's what he said." She said this was discussed both before and after the marriage, and that the husband had said "for the future of the children it should be put in your name . . . I will get around to it

. . . just don't worry about it." There was no testimony the agreement to re–marry was conditioned on conveyance of the residence. The wife did not explain why she married defendant without him complying with his alleged promise to convey the residence to her. It would appear the trial court did not fully accept the wife's testimony that her husband had agreed to convey the real estate to her. Had this been believed, the court would have decreed full title to her instead of the one–half interest actually decreed.

In contrast, the husband denied these specific conversations, but did testify: "I was going to change it when we got married. She's a wife and my children would have it but somewhere along the line she started–wanted her name on my checking account and she started getting real hungry. So I would not change it and that's why I'm sitting in the courtroom today. I knew there was going to be a lawsuit today so that's why I didn't put it in her name."

*Jones v. Linder*, 247 S.W.2d 817 [3] (Mo. 1952) holds: "The express and clear language of the statute of frauds, RSMo.1949, Section 432.010, V.A.M.S., makes an oral contract to convey real estate entirely unenforceable at law or in equity either by specific performance or by an award of damages for its breach. The statute is a legal justification for refusal to perform a verbal agreement for the conveyance of realty."

■ We weigh the testimony to determine its sufficiency to overcome the strong presumption of the husband's continuing ownership. The wife's burden is set forth in *P. R. T. Inv. Corp. v. Ranft*, 252 S.W.2d 315 [1] (Mo.1952): "The equitable remedy of specific performance presupposes the existence of a valid contract between the parties to the action, or between those through whom they claim. The contract must be a concluded contract–there must have been a clear mutual understanding and a positive assent on both sides as to the material terms, and the contract must be sufficiently definite and certain to enable the court to decree its specific performance."

In *Bildner v. Giacomo*, 522 S.W.2d 83 [3–8] (Mo.App.1975), we held: "The party seeking specific performance will be held to clear and convincing proof and the contract must be explicit ..." The court explained: "The law applicable in such cases is settled, and he who invokes the power of a court of equity to decree specific performance of an alleged oral contract seeks to avail himself of an exception to the statute of frauds, which exception is sparingly used and only in those instances where the strict letter of the statute would perpetrate a fraud upon the plaintiff. *Steere v. Palmer*, 359 Mo. 664, 223 S.W.2d 391, 392 [2] (1949). He carries a heavy burden of proof, i. e., proof of the alleged oral contract must be such as to leave no reasonable doubt in the mind of the chancellor that the contract was in fact made." In denying specific performance the *Bildner* court relied, as we do here, on the landmark case of *Walker v. Bohannon*, 147 S.W. 1024 [1] (Mo.1912).

The *Walker* court explained the need for strict rules to warrant an exception to the statute of frauds, and among those requirements declared: (a) The alleged contract to convey must be clear, explicit and definite; (b) it must be proven as pleaded (as noted, no contract was pleaded here); (c) such contract to convey cannot rest on conversation too loose or casual; (d) the proof of the alleged contract must leave no reasonable doubt in the court's mind that it was in fact made; (e) to deny the alleged contract would bespeak an unconscionable wrong; and (f) proof of a mere disposition to convey by way of gift is insufficient.

A claimed exception to the statute of frauds is "regarded with the most rigid scrutiny". *Jones v. McGonigle*, 37 S.W.2d 892 [1–4] (Mo.1931). The exception is to be "sparingly invoked". *Steere v. Palmer*, 223 S.W. 391 [2, 3] (Mo.1949). "The rules are necessarily strict and should not be liberalized and there should be no further encroachment on the statute." *Poole v. Campbell*, 289 S.W.2d 25 [9] (Mo.1956). And, relief will be denied if there is doubt "as to whether there has been a meeting of the minds or a full and complete understanding of all the terms of the contract sought to be enforced". *Ragan v. Schreffler*, 306 S.W.2d 494 [11, 12] (Mo.1957), and *Morris v. Pike*, 545 S.W.2d 410 [2, 3] (Mo.App.1976).

In *Ellison v. Wood*, 286 S.W.2d 27 (Mo.App.1956), the court denied specific performance of an unwritten promise to convey real estate. In its opinion Judge Ruark summarized the principles of *Walker* supra and added specifically that "specific performance presupposes the existence of complete and concluded contract" by evidence that leaves "no reasonable doubt ... as to the contract and its terms"; that proof of mere willingness to convey does not make an agreement to convey; and that to overcome the statute of frauds the evidence must prove the contract beyond "peradventure of a doubt" and the court may not rely on presumptions or inferences to make a contract for the parties.

Measuring the evidence before us against the strict requirements enumerated above we hold it was not so clear, explicit and definite as to overcome the statute of frauds. We must reverse the challenged portion of the decree.

We remand the case to the trial court with instructions to amend its decree by deleting therefrom the sentence: "Petitioner awarded one–half interest in the residence at 518 Averill with respondent to be responsible for the monthly payments thereon." The decree is otherwise affirmed.

DOWD, P. J., and REINHARD and CRIST, JJ., concur.