710 S.W.2d 474 (1986)
In re the Marriage of C.M.D., Appellant,
v.
J.R.D., Respondent.
No. 50060.
Missouri Court of Appeals, Eastern District, Division Two.
May 13, 1986.
*476 William R. Gartenberg, Clayton, for appellant.
Mastorakos, Dunne & Hennerich, Janet E. Papageorge, Homer N. Mastorakos, Chesterfield, for respondent.
CRIST, Judge.
Husband appeals from the decree of the trial court dissolving the marriage of the parties. He claims error occurred in the division of property, and the awards of child support, maintenance, and attorney's fees to wife. We modify the decree and affirm as modified.
Husband and wife, both medical doctors, were married in 1975, and had two children. Following the birth of their second child, wife stayed home to care for the children. She remained at home until after the separation of the parties, when wife moved away from the St. Louis area and purchased a medical practice. The trial court found husband's marital misconduct precipitated the separation.
In its decree, the trial court referred to Exhibits A, B, and C, which were lists of the marital property, husband's separate property, and wife's separate property, respectively. These exhibits were not attached to the trial court's decree. Many of husband's claimed errors relating to the distribution of the property are a result of the omission of these exhibits from the decree. Following the filing of husband's brief, the parties, in this court, stipulated Exhibits A, B, and C, referred to by the trial court in its Findings of Facts, Conclusions of Law, and Decree of Dissolution filed on April 1, 1985, were Exhibits A, B, and C, as contained in Respondent's (wife) Memorandum Amending her Suggested Findings of Facts and Conclusions of Law. The Findings of Facts, Conclusions of Law, and Decree of Dissolution of the trial court, filed April 1, 1985, are amended to include Exhibits A, B, and C as contained in the memorandum amending Respondent's Suggested Findings of Facts and Conclusions of Law. Husband's complaints relative to the omission of the exhibits are overruled as moot.
Husband raises several issues concerning the designation of property as marital or separate, and the division of the marital property. Taking the view the dissolution decree should become final insofar as this court is reasonably and equitably able to determine the issues therein, to the extent husband's allegations of error have merit, we will modify the decree rather than remand to the trial court.
The court erred in finding the following stocks were marital property;
Stock:

No. of Unit Price Total Value
Shares Description 3/19/85 3/19/85
38 Brascan Ltd. 24 5/8 $ 935.75
38 Allied Corp 38 1,444.00
25 Eastman Kodak 68 3/4 2,406.25
55 FMC Corp 59 7/8 3,293.13
23 Johnson & Johnson 39 5/8 911.38
124 Northwest Energy Ind. 52 5/8 6,494.50
50 United Brands; Pref. 13 1/4 662.50

The court held these stocks were marital property, and concluded, as a matter of law, these stocks should be "sold and the proceeds therefrom divided equally between the parties ..." The decree also provided that in the event husband had previously disposed of any of the stock, then the proceeds from that disposition should be split equally between the parties.
The record is completely barren of any assertion by wife of any interest, marital or not, in these stocks. The only evidence these stocks were owned by husband was the dividends from these stocks were declared on his tax returns; neither party included the stocks on their statements of property. He testified the stocks were held jointly by himself and his mother, and he never possessed, bought or sold these stocks, or received the dividends from them. His mother had placed the stocks into their joint names sometime prior to the marriage in 1975 for tax purposes, and reimbursed husband and wife for the tax paid as a result of the declaration of the dividends for their taxes. Husband further testified wife was aware of this arrangement, and its purpose, and acquiesced in the maneuver by signing the tax returns. *477 His testimony was corroborated by his accountant.
Granting due deference to the trial court's ability and responsibility to determine the credibility of the witnesses, but given the total lack of any claim by wife, there is insufficient evidence these stocks were marital property. The decree is modified to provide the stocks listed above are set aside to husband as his separate property. Fields v. Fields, 643 S.W.2d 611, 613-15 (Mo.App.1982).
Error is asserted in the trial court's award of one-half of the value of husband's pension plans to wife. The evidence indicates husband had interests in two pension plans, earned while he was working at Lutheran and Deaconess Hospitals. Due to the short period of time he worked at those two hospitals, the plan interests were of little value. Considering the short time husband had worked for either of those hospitals, and the plans' lack of value, these inchoate, unvested, early "stage-one" pension plan interests, while indubitably marital property, see Kuchta v. Kuchta, 636 S.W.2d 663, 665-66 (Mo. banc 1982), should have been awarded to husband, and the decree is amended to so reflect.
The award to wife of the term life insurance policy provided by husband's employer and the term life insurance policy procured from North American Life Insurance Company likewise cannot stand. The term life insurance policies cannot be considered marital property subject to division, as they have no present value. Flach v. Flach, 645 S.W.2d 718, 719[1] (Mo.App. 1982). The interests in these policies are awarded to husband.
Husband attacks the decision of the trial court setting aside to wife, as her separate property, the piano valued at $125, wedding rings valued at $1200, CARNAGHNI Tax Free valued at $248, and clothing, jewelry and personal effects valued at $500. Wife admits this property is properly characterized as marital property. However, as this property should have been awarded to wife, we will not disturb the order of the trial court doing so. In Re Marriage of Garrett, 654 S.W.2d 313, 316[1] (Mo.App.1983); Turner v. Turner, 650 S.W.2d 662, 664 (Mo.App.1983).
Husband claims the court erred in setting aside, as wife's separate property, her medical practice and personal bank account, because they were acquired after the actual separation of the parties and before the decree. Such a designation may not have been error. See Shelor v. Shelor, 683 S.W.2d 647, 649[8] (Mo.App.1984); But see Anderson v. Anderson, 656 S.W.2d 826, 827[2] (Mo.App.1983). However, the court actually included these items in Exhibit A, which was a list of the marital property of the parties, and, therefore, it appears they were in fact characterized as marital property. In any event, this property should have been awarded to wife. Garrett, 654 S.W.2d at 316[1]; Turner, 650 S.W.2d at 664.
Error is also asserted in the court's refusal to find wife had an interest in certain real estate. This real estate was purchased by and titled in wife's parents, who were not made parties to the action. Wife lived there. She testified she had no ownership interest in the property, but had agreed to purchase it at a later date if she could afford it. There was also evidence in the record which would support the opposite conclusion. The court apparently believed wife's testimony. Credibility is a matter consigned to the trial court, and we are unable to find an abuse of discretion in the court's decision here. Petri v. Petri, 688 S.W.2d 386, 388 (Mo.App.1985).
It is asserted the court failed to consider wife's marital misconduct, in that she refused to sign joint tax returns with husband following the separation, and she interfered with his visitation of the children. Wife, however, had explanations for these matters, which apparently the court chose to believe in finding no misconduct on her part. Again, we cannot say this determination of credibility was a abuse of discretion. Id.
*478 Husband also complains concerning a finding by the trial court he only contributed approximately $9,000 for support during the 22 months proceeding the hearing, claiming this finding was erroneous. However, the record does not indicate the ruling on the amount of support provided was taken into account on the matter of the distribution of property, and therefore, even if the ruling were erroneous, there appears to be no prejudicial effect therefrom.
In his final challenge to the property division, husband claims the court erred in finding him guilty of marital misconduct and taking this misconduct into account in the division of the property, because he claims his misconduct did not occur until after the parties separated, did not burden the wife, and therefore was improperly taken into account. The evidence is clear, however, husband met his paramour prior to the separation of the parties, and she was a cause of many disagreements and problems between husband and wife. Husband's testimony he did not engage in any illicit sexual activity until after the separation was apparently found not credible by the trial court, as it had the right to do. Id. This determination is bolstered by husband's admission he, upon separation of the parties, moved into the apartment complex where his paramour lived. This provides ample support for the court's conclusion the misconduct predated and caused the separation of the parties and therefore, their misconduct was properly considered. See Huber v. Huber, 682 S.W.2d 493, 494-95 (Mo.App.1984).
Error is also claimed in the trial court's ruling admitting testimony by wife concerning allegedly privileged interspousal communications. When wife was questioned as to why husband told her he wanted to leave her, husband objected on the grounds of the privilege. This objection was overruled because husband, in a deposition taken prior to the testimony in this case, had questioned wife concerning confidential marital communications and therefore had waived the protection of the privilege.
The interspousal communication sought to be disclosed appears from the record to have been confidential, and therefore covered by the privilege, even in a dissolution action. The privilege, however, is subject to waiver. Coleman v. Coleman, 318 S.W.2d 378, 381-82[3] (Mo.App.1958). Such a waiver can occur at a deposition, if testimony of the communication at the deposition is voluntary elicited. State ex rel. DeGraffenreid v. Keet, 619 S.W.2d 873, 878[9] (Mo.App.1981). The deposition testimony at issue here was elicited by appellant's counsel. This voluntary action by appellant waived the applicability of the privilege. See Thompson v. Thompson, 84 S.W.2d 990, 992 (Mo.App.1935).
Also, husband testified to such communications at trial. As an example, he testified to wife's criticism of himself and stated she did it in front of the children "at times." He did not remember if she did it in front of anyone else. This communication appears to have been confidential as well. Therefore, having testified to such communications, he has waived the privilege.
Husband also levels complaints against the awards of child support and maintenance. The court granted wife child support in the amount of $500 per month per child, and maintenance in gross of $30,000 payable at the rate of $1,000 per month. The record shows the court considered the relevant factors contained in Sections 452.335 and 452.340 RSMo 1978, in making the awards. These awards are supported by substantial evidence, and are not against the weight of the evidence.
The court, citing to husband's alleged failure to provide adequate support, also ordered him to pay $15,000 as retroactive child support, and $18,000 as retroactive maintenance. The petition for dissolution was originally filed on February 17, 1983. Wife moved for maintenance and child support pendente lite on June 7, 1983. This motion was never heard, and the petition *479 for dissolution was heard in February of 1985.
The court erred in making these awards. Sections 452.335 and 452.340 speak prospectively, not retrospectively. Husband voluntarily provided some support [Compare In re Marriage of D.M.S., 648 S.W.2d 609, 615 (Mo.App.1983) ]; if wife was dissatisfied with this amount, her remedy was to seek a ruling on her motion PDL. Section 452.315(1) RSMo 1978. Wife's failure to do so waived any claim she may have had for increased allowances during this period. See also Matthes v. Matthes, 464 S.W.2d 754, 756-57 (Mo.App. 1971).
Husband also claims the award of attorney's fees to wife for two attorneys was unreasonable, because they included amounts for unnecessary and duplicate services, and the requests were not substantiated by time records or other available records. The trial court has a wide discretion in ruling on requests for attorney's fees, and we find no abuse of that discretion in this case. Weast v. Weast, 682 S.W.2d 86, 88[5] (Mo.App.1984).
In summary, the decree is modified to provide:
(a) Exhibit A, B, and C to respondent's memorandum amending the suggested Findings of Facts and Conclusions of Law are included as Exhibits A, B, and C to the court's Finding of Facts and Conclusions of Law and Decree of Dissolution filed April 1, 1985;
(b) The following stock is hereby declared to be separate property of the husband and is set off to him:
Stock:

No. of Unit Price Total Value
Shares Description 3/19/85 3/19/85
38 Brascan Ltd. 24 5/8 $ 935.75
38 Allied Corp 38 1,444.00
25 Eastman Kodak 68 3/4 2,406.25
55 FMC Corp 59 7/8 3,293.13
23 Johnson & Johnson 39 5/8 911.38
124 Northwest Energy Ind. 52 5/8 6,494.50
50 United Brands; Pref. 13 ¼ 662.50

(c) Husband is awarded the entire interest in his pension plans and in the term life insurance policies.
(d) The following property, set aside to wife as her separate property, is hereby declared to be marital property and is awarded to wife; piano valued at $125, wedding rings valued at $1200, CARNAGHNI Tax Free valued at $248, and clothing, jewelry and personal effects valued at $500.
(e) The awards of $18,000 for retroactive maintenance, and $15,000 for retroactive child support are reversed.
As modified, the decree is affirmed.
DOWD, P.J., and REINHARD, J., concur.