UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

____________________

No. 92-2415

COMMERCIAL UNION INSURANCE CO.,

Plaintiff, Appellant,

v.

WALBROOK INSURANCE CO., LTD., ET AL.,

Defendants, Appellees.

____________________

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, 
U.S. District Judge
]

____________________

Before

 Cyr and Stahl, 
Circuit Judges
,

Of the District of Puerto Rico, sitting by designation.

 
District Judge
.

____________________

Stephen A. Cozen
, with whom 
Cozen and O'Connor
, 
Lawrence T. Bowman
, 
Richard C. Bennett
, 
, 
Richard L. Neumeier
, 
Quinn and Morris
 and 
Robert H. Quinn
 were on brief for appellant.

Robert J. Brown
 with whom 
, 
John J. Curley
, 
Mark A. DiTaranto
, 
, 
James B. Dolan
 and 
Erin R. Boisvert
 were on brief for appellees.

____________________

September 28, 1993

____________________

CYR, Circuit Judge.
 In 1982, Commercial Union Insurance Company ["CU"] brought the present lawsuit seeking a judicial declaration that an umbrella insurance policy issued by Walbrook Insurance, 
et
 
al
.
As the parties agree that Massachusetts law governs their contract dispute, we apply Massachusetts law. 
See
 
Carey
 v. 
Bahama Cruise Lines
Borden
 v. 
Paul Revere Life Ins. Co.
, 935 F.2d 370, 375 (1st Cir. 1991) (similar).

 Following extended discovery proceedings, both CU and Weavers moved for summary judgment. The district court entered summary judgment for Weavers, and CU appealed. We now reverse.

I

BACKGROUND

A. 
The Insurance Policies

occurrences

occurrence
-basis, the Travelers EPL Endorsement covered only 
claims

i.e.
, a deductible, up to the Weavers Umbrella limits. The latter clause in turn was modified by a two-part EPL Endorsement ["Weavers EPL Endorsement"]. 

The first part of the Weavers EPL Endorsement, which we refer to as the "Weavers EPL Extension," provides that:

this policy is extended to include Engineers Professional Liability as more fully described in the underlying General Liability policy/ies [
i.e.

B. 
The Peterson Claims

Although it was later discovered that none of the lawsuits against CU arising out of the Peterson Incident [the "Peterson Claims"] were filed within the Travelers Policy period, Travelers initially undertook the defense of the Peterson Claims at CU's request. Weavers monitored Travelers' defense of the Peterson Claims during this period as well.

Later, in June 1982, CU informed Travelers that it had determined that no timely claim based on the Peterson Incident had been filed during the Travelers Policy period. CU accordingly released Travelers from all obligations under the Travelers Policy, "in the interest of 'fair business dealings.'" Meanwhile, CU settled the Peterson Claims for approximately $2.5 million, obtaining primary indemnification in the amount of $1 million from American Employers Insurance Company ["American Employers"].
2:
CU calculated this sum as follows: $2,502,874.30 [cost of defending against and settling Peterson Claims] minus $1,000,000.00 [primary insurance paid by American Employers], leaving $1,502,874.30, plus interest. The reasonableness of these figures is not at issue.

CU advances alternative arguments on appeal. First, it urges that the main body of the Weavers Umbrella must cover EPL on an 
occurrence
 basis because the Weavers EPL Endorsement, rather than diminishing the EPL coverage extended under the main body of the Weavers Umbrella, provides 
additional
 EPL coverage on a 
claims
-basis. Alternatively, CU insists, the Peterson Claims pleaded in its complaint include non-EPL claims which are covered under the main body of the Weavers Umbrella.
4:
Since CU prevails on its first claim, we do not address its alternative claim.

claims
-based, CU's declaratory judgment action fails as a matter of law, because the Peterson Claims were not filed within the Weavers Umbrella policy period.

II

DISCUSSION

A. 
Summary Judgment Standard

We review a grant of summary judgment 
de
 
novo
, employing the same criteria incumbent upon the district court in the first instance. 
Pedraza
 v. 
Shell Oil Co.
, 942 F.2d 48, 50 (1st Cir. 1991), 
cert.
 
denied
Mesnick
 v. 
General Elec. Co.
, 950 F.2d 816, 822 (1st Cir. 1991), 
cert
. 
denied
, ___ U.S. ___, 112 S.Ct. 2965 (1992). This contract dispute presents pure issues of law for the court.

B. 
Construction of the Weavers Umbrella Policy

The proper construction of an insurance contract is a matter of law for both trial and reviewing courts. 
Cody
 v. 
, 439 N.E.2d 234, 237 (Mass. 1982). Insurance contract terms are given their ordinary meaning, 
Continental Cas. Co.
 v. 
Canadian Universal Ins. Co.,
see
 
Falmouth Nat'l Bank
 v. 
Ticor Title Ins. Co.
Eagle-Picher Indus., Inc.
 v. 
Liberty Mut. Ins. Co.
cert.
 
denied

Reliance Ins. Co.
 v. 
 468 N.E.2d 621, 624 (Mass. 1984).

1. EPL Coverage Under the Main

Body of the Weavers Umbrella

The district court held that the Weavers Umbrella did not address EPL claims and that the Weavers EPL Endorsement did not cover the Peterson Claims. We conclude that the plain language in the main body of the Weavers Umbrella itself afforded CU claims-based EPL coverage.

Section I of the Weavers Umbrella (entitled "COVERAGE") states that:

[Weavers] hereby agree[s], subject to the limitations, terms and conditions hereinafter mentioned, to indemnify [CU] for all sums which [CU] shall be obligated to pay by reason of the liability 

(a) imposed upon [CU] by law, or

for damages on account of 

(i) Personal Injuries 

(ii) Property Damages

(iii) Advertising liability

caused by or arising out of each 
occurrence
 happening anywhere in the world [emphasis added].

Section II (entitled "LIMIT OF LIABILITY") immediately follows the "COVERAGE" section, and limits Weavers' liability to the 
excess
occurrence

See
 
infra
 at p. 15.

The "COVERAGE" and "LIMIT OF LIABILITY" sections must be construed compatibly, 
Rice Growers Ass'n
 v. 

cf.
 
Rosen
 v. 
A-H, Inc.
, 456 N.E.2d 477, 480 (Mass. App. Ct. 1983), as the latter plainly delimits the former.
6:
Cf.
 
Lydon
 v. 
Allstate Ins. Co.
, 359 N.E.2d 316, 317 (Mass. App. Ct. 1977) (intent of parties "gathered from construing contract as a whole and not by placing special emphasis on any one part.").

excess

7:
Under this subsection (b) of the Weavers Umbrella, CU is covered only for amounts in excess of the $25,000 "deductible." Although Weavers refers to the coverage in subsection (b) as "excess" over a "self-insured retention" (as opposed to "primary" with a "deductible"), this difference in terminology is without functional significance. 

 For such umbrella coverage to extend, either on an excess basis (per (a)), or on a primary basis (per (b)), the occurrence must be covered under the Weavers Umbrella in the first place. As noted below, however, the Weavers Umbrella defines "occurrences" very broadly.

e.g.
, "but only in excess of the limits of underlying insurance" per (a). Thus, it is not surprising that the "COVERAGE" provisions in the main body of the Weaver Umbrella make no explicit mention of EPL coverage. Indeed, the broad language of the Weavers Umbrella "COVERAGE" provisions identifies 
no
 
particular
 
activity
 whatever, for the simple reason that coverage under the main body of the Weavers Umbrella is afforded for 
all activities which result in occurrences for which CU
 
must respond
 
in
 
damages
.

The parties agree that the Peterson Incident 
occurred

2. 
The Weavers EPL Endorsement

The Weavers EPL Endorsement must be construed compatibly with the Weavers Umbrella, of which it is a part. 
See
 
Falmouth
, 920 F.2d at 1061. The Weavers EPL Endorsement states that:

as from inception this policy is 
extended

claims
-basis only, because the language of the Weavers EPL Endorsement follows the form of the Travelers EPL Endorsement, which is exclusively 
claims
-based.

claims-based
 and no claims were filed within the Weavers Umbrella policy period. Weavers insists that the language "this policy is 
extended
 to include [EPL]" supports its reading. Thus, Weavers urges the position that the Weavers EPL Endorsement "extends" a new 
category
CU argues that EPL coverage is indeed 
extended
i.e.
, 
claims
-based EPL coverage) to go with the 

claims
prior to the Weavers Umbrella period

3. 
The Weavers Umbrella Policy As a Whole

In construing a contract, we must give reasonable effect to all terms whenever possible. 
Jimenez
 v. 

Feinberg
 v. 
Insurance Co. of N. Am.
, 260 F.2d 523, 527 (1st Cir. 1958) (applying Mass. law). Our interpretation of the Weavers EPL Endorsement, as extending 
claims
occurrence
-based EPL coverage already afforded by the plain language in the main body of the Weavers Umbrella, gives full effect to all terms in the main body of the Weavers Umbrella and in the Weavers EPL Endorsement. Weavers' reading, on the other hand, by ignoring the plain meaning of the language in the main body of the Weavers Umbrella (which provides 
occurrence
-based coverage, either primary or excess, regardless of the nature of the causative act or omission), renders the plain language in the Weavers EPL Endorsement meaningless as well.

See
 
ITT Corp.
 v. 
LTX Corp.
, 926 F.2d 1258, 1261 (1st Cir. 1991). The ambiguity determination is subject to plenary review. 
Fashion House, Inc.
 v. 
K Mart Corp.
Liberty Mutual Ins. Co.
 v. 
Gibbs
, 773 F.2d 15, 17 (1st Cir. 1985) (applying Mass. law).
8:
Even were we to assume, 
arguendo

contra
 
proferentum
"). 
See
 Robert E. Keeton, et al., 
Insurance Law
Falmouth
see
 
American Home Assur. Co.
 v. 
Libbey-Owens-Ford Co.
, 786 F.2d 22, 28 (1st Cir. 1986) (applying "general insurance principles"). The district court felt that it ought not apply 
contra
 
proferentum

citing
 
Falmouth

See
, 
e.g.
, 
Continental Cas.
, 924 F.2d at 375 n. 4 (refusing to apply 
Falmouth

id.
Eagle-Picher
, 682 F.2d at 21 n.6 (upholding exclusion of proof of bargaining power where evidence did not show, 
inter
 
alia
, that insured "actively participated" in drafting policy terms, 
citing
 
First Nat'l Bank of Decatur
 v. 
Insurance Co. of N. Am.
, 424 F.2d 312, 317 (7th Cir. 1970) (Illinois law), 
cert
. 
denied
, 398 U.S. 939 (1970)). 
See
 
also
 E. Allan Farnsworth, 
Contracts
 (2nd Ed.) at 518 (1990) (noting that 
contra
 
proferentum
 "may be invoked even if the parties bargained as equals" (
citing
 
Bay State Smelting Co.
 v. 
Ferric Indus., Inc.
, 292 F.2d 96, 99 (1st Cir. 1961)). Weavers proffers no evidence that CU participated in drafting the language at issue. In any event, of course, as the Weavers Umbrella policy language is not ambiguous, the 
contra
 
proferentum

subject
 
to
 
a $250,000 deductible

See
 
supra
 note 5 and accompanying text.

The interpretation proposed by CU better comports with the basic nature and purpose of "umbrella" policies. The first title line at the top of Weavers' printed policy form reads: "
UMBRELLA POLICY (LONDON 1971)
See
 
Bryan Constr. Co.
 v. 
Employers' Surplus Lines Ins. Co.
Insurance Law and Practice

away from the insured
 the burden of choosing the risks to which the insured remains exposed:

, "Companies and Coverages: Specialty Lines" at U-1 (December 1980) (
cited
 
in
 Pl.'s Br. at 33).

For the foregoing reasons, we hold that CU was entitled to summary judgment. The judgment previously entered in favor of appellee Weavers must be vacated, and judgment shall be entered for appellant CU.

Reversed and remanded for further proceedings consistent with this opinion
.